JB:EMN
F.#2009R00579

**M10- 538**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    -against-

DAVID SILVERMAN,

           Defendant.

- - - - - - - - - - - - - - - - -X

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANT

10 M 538

EASTERN DISTRICT OF NEW YORK, SS:

      CHARLOTTE BRAZIEL, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

      In or about and between September 2006 and February 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DAVID SILVERMAN, together with others, did knowingly and intentionally conspire to use physical force and the threat of physical force against a person, to wit: John Doe, with intent (1) to prevent the testimony of such person in an official proceeding, to wit: a federal grand jury investigation in the Middle District of Florida, (2) to cause and induce such person to withhold testimony from an official proceeding, to wit: a federal grand jury investigation in the Middle District of Florida, and (3) to

hinder, delay and prevent the communication to law enforcement officers of the United States, to wit: Special Agents of the Federal Bureau of Investigation, of information relating to the commission and possible commission of federal offenses, including, but not limited to, robberies and other racketeering activity, in violation of Title 18, United States Code, Sections 1512(a)(2)(A), 1512(a)(2)(B)(i) and 1512(a)(2)(C).

(Title 18, United States Code, Sections 1512(k) and 3551 et seq.).

The source of your deponent's information and the grounds for her belief are as follows:

1. I have been a Special Agent with the FBI for 22 years. I am currently assigned to an FBI squad based in Tampa, Florida that investigates organized crime, among other criminal activity. During my tenure with the FBI, I have participated in organized crime investigations that have included, among other investigative techniques, the use of physical surveillance, execution of search warrants, consensual recordings of individuals associated with organized crime and debriefing of confidential sources and cooperating witnesses. Through my training, education and experience, I have become familiar with organized crime activities, including efforts to tamper with witnesses suspected of cooperating with the government.

2

2. Because this affidavit is being submitted for the purpose of establishing probable cause to arrest, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. The information set forth below is based upon my experience and training as an FBI Special Agent, my review of documents and other evidentiary items, debriefing of witnesses, and my discussions with other law enforcement agents. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only.

3. According to a witness who is cooperating with the government ("CW1"),[1] CW1 began associating with an individual named James Cadicamo in the late 1990s or early 2000s. CW1 and Cadicamo associated at clubs in the Tampa, Florida area, among

---

[1] CW1 pled guilty pursuant to a plea agreement with the government and subsequently entered into a cooperation agreement. CW1 was sentenced to a term of imprisonment and is cooperating in hopes of receiving a sentence reduction pursuant to Rule 35 of the Federal Rules of Criminal Procedure and entry into the Witness Security Program. CW1 has a serious criminal history. CW1 has provided information that has been corroborated by, among other sources, other cooperating witnesses, surveillance and physical evidence.

other places. Through Cadicamo, CW1 met associates of Cadicamo from New York, including two individuals who are now witnesses cooperating with the government, CW2 and John Doe.[2]

4. According to CW1, in the mid-2000s CW2, John Doe and others, including an individual named Ronald Trucchio, were indicted on racketeering charges in federal court in Tampa. According to CW2, Trucchio is a captain in the Gambino organized crime family of La Cosa Nostra ("Gambino family"), and CW2, John Doe and Cadicamo are all associates in the Gambino family.

5. According to CW1, in approximately late summer 2006, Cadicamo told CW1 that John Doe was cooperating with the government and would be testifying against Trucchio at his upcoming trial.[3] Cadicamo, who had not been charged, told CW1 that he had engaged in criminal activity with John Doe, including robberies, and was concerned that he would himself be charged. Cadicamo told CW1, in substance, that he wanted to kill John Doe

---

[2] CW2 and John Doe have pled guilty pursuant to cooperation agreements with the government and are cooperating in the hopes of receiving leniency at sentencing. CW2 and John Doe have serious criminal histories. CW2 and John Doe have provided information that has been corroborated by, among other sources, other cooperating witnesses, surveillance and physical evidence.

[3] On August 17, 2004, CW2, John Doe, Trucchio and others were indicted on racketeering and other charges in the Middle District of Florida. See United States v. Trucchio et al., 04 CR 348 (SCB) (M.D. Fla.). John Doe's cooperation became public in September 2006.

4

to prevent him from testifying and providing additional information to the government. CW1 agreed.

6. According to CW1, Cadicamo stated that CW2 had fled to escape prosecution and was in Brazil. Cadicamo stated that he was in contact with CW2, that at some point CW2 had been apprehended by the Brazilian authorities, and that Cadicamo maintained contact with CW2 even after CW2 was imprisoned in Brazil. Cadicamo stated that he had spoken with CW2 about the fact that John Doe was cooperating and that they had argued about how concerned they should be about that fact. Cadicamo stated that he told CW2 that they should be more concerned about John Doe, whereas CW2 was more concerned about Trucchio cooperating.

7. According to CW1, one evening after the Trucchio trial had begun, Cadicamo contacted CW1 and told CW1 that John Doe would be testifying the following day. Cadicamo told CW1 to go to the courthouse and watch to see if there would be an opportunity to do something to John Doe before John Doe went inside. CW1 went to the courthouse and waited but did not see John Doe. After some time passed, CW1 decided to go into the courthouse to see what was happening. CW1 went into the courtroom and saw that John Doe was testifying. I was attending the trial and, upon being informed that CW1 had failed to provide requested information to the security officers, escorted CW1 from the courtroom.

5

8. According to CW2, Cadicamo and CW2 spoke over the telephone about the fact that John Doe was cooperating and planning to testify at the Trucchio trial while CW2 was in prison in Brazil. CW2 told Cadicamo that they should worry more about Trucchio cooperating than John Doe.

9. According to CW1, CW1 and Cadicamo had several subsequent discussions after the trial about assaulting John Doe. In early 2007, they discussed CW1 traveling to New York to assault Malone, who, according to Cadicamo, was living there while on bail. They ultimately agreed that CW1 would travel to Philadelphia, where CW1 would be met by one of Cadicamo's friends, who CW1 later learned was the defendant DAVID SILVERMAN. The plan was for SILVERMAN to drive CW1 to New York and provide CW1 with a baseball bat that CW1 would use to assault John Doe. According to CW1, CW1, Cadicamo, SILVERMAN and another individual went to Miami during the weekend of the Super Bowl.[4] While they were in a club together, Cadicamo pointed to SILVERMAN and told CW1 that he was the one who was supposed to pick CW1 up in

---

[4] Super Bowl XLI was played in Miami, Florida on February 4, 2007.

Philadelphia.[5] CW1 never ultimately traveled to Philadelphia to carry out the assault.

10. According to CW1, around the time of the Super Bowl, Cadicamo told CW1 that John Doe was living in New York and driving a Lincoln Navigator.

11. According to John Doe, s/he was living in Queens, New York in early 2007 and driving a Lincoln Navigator.

12. On or about January 29, 2007, John Doe called a fellow FBI agent and told him that while driving around Queens, New York, he observed a man following him who John Doe recognized as the defendant DAVID SILVERMAN. John Doe noted the license plate of the vehicle SILVERMAN was driving. Later that day, John Doe called SILVERMAN and asked him why he was following him/her. SILVERMAN initially denied following John Doe, then advised that he was upset at John Doe for testifying and providing information about Cadicamo and others.

---

[5] In 2007, CW1 described SILVERMAN as five feet nine inches tall, approximately 180-185 pounds and approximately 32 to 34 years old, and stated that SILVERMAN was recently released from prison. According to SILVERMAN's rap sheet, he is five feet nine inches tall, 200 pounds and 35 years old, and was released from prison in February 2006.

7

13. The FBI agent John Doe called subsequently verified that the license plate John Doe provided was registered to the defendant DAVID SILVERMAN.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued and that the defendant DAVID SILVERMAN be dealt with according to law.

*Charlotte Braziel*
CHARLOTTE BRAZIEL
Special Agent
Federal Bureau of Investigation

Sworn to before me this
2 day of May. 2010

HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK